UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

v.

**PRAXSYN CORPORATION
and FRANK J. BRADY,**

        **Defendants.**
_____/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

**I. INTRODUCTION**

1. In the midst of the ongoing COVID-19 pandemic, microcap issuer Praxsyn Corporation and its chief executive officer, Frank J. Brady, issued false and misleading press releases claiming Praxsyn was able to acquire and supply large quantities of N95 or similar masks to protect wearers from the COVID-19 virus.

2. On February 27, 2020, Praxsyn issued a press release stating, among other things, that it was negotiating the sale of millions of masks meeting the standards for N95 masks set by the National Institute for Occupational Safety and Health (and similar standards), and that the company was vetting suppliers to guarantee a dependable supply chain of the masks.

3. Just a few days later, on March 4, 2020, Praxsyn issued another press release asserting it *had* a large number of N95 masks on hand and had created a "direct pipeline from manufacturers and suppliers to buyers" of the masks. Those masks have been and continue to be in high demand around the world. Brady was quoted in both press releases, including stating in

the March 4 release that Praxsyn was only taking orders of 100,000 masks or more.

4. Both press releases were blatantly false. Praxsyn never had either a single order from any buyer to purchase masks, or a single contract with any manufacturer or supplier to obtain masks, let alone any masks actually in its possession. Dozens of emails and other documents from late February through March show Brady and at least one Praxsyn director knew efforts to obtain and sell N95 or other masks were proving futile. Praxsyn admitted as much when, after regulatory inquiries, it issued a third press release on March 31, 2020 acknowledging it never had masks on hand.

5. Through their conduct, Praxsyn and Brady violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5. The Commission seeks injunctive relief and civil penalties against both Defendants, and an officer-and-director bar against Brady.

## II.  DEFENDANTS

6. **Praxsyn** is a Nevada corporation incorporated in 2014 with its principal offices purportedly located in West Palm Beach, Florida. Praxsyn claims to be a "specialty finance company focused on providing cash flow solutions and medical receivables financing to healthcare providers in the US that focus on personal injury and workers compensation." Neither Praxsyn nor its securities are registered with the Commission. Praxsyn's common shares are quoted on OTC Link (previously "Pink Sheets") operated by OTC Markets Group Inc. The Commission suspended trading in Praxsyn's securities from March 26 through April 8, 2020.

7. **Brady**, 45, is a resident of Atlanta, Georgia. Brady has been Praxsyn's chief executive officer since September 1, 2018. He has never been registered with the Commission in any capacity.

## III.  JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa.

9. The Court has personal jurisdiction over Praxsyn and Brady and venue is proper in the Southern District of Florida as Praxsyn's offices are located in Palm Beach County and the corporate acts giving rise to the conduct alleged in the Complaint, including those undertaken by Brady, occurred in the District.

10. Praxsyn and Brady, directly and indirectly, made use of the means and instrumentalities of interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.  MISREPRESENTATIONS, OMISSIONS, AND FRAUDULENT CONDUCT

11. On February 27, 2020, Praxsyn issued a press release and sent it to the Globe Newswire for public distribution entitled "Praxsyn Joining The Global Fight To Stop The Spread Of Corona Virus."  Among other things, the release stated that "Praxsyn . . . is negotiating the sale of millions of masks meeting the NIOSH N95 mask standard and similar standards, capable of protecting wearers from breathing in viruses, including the Novel Coronavirus COVID-19."

12. The release went on to state that Praxsyn was "currently evaluating multiple orders and vetting various suppliers in order to guarantee a supply chain that can deliver millions of masks on a timely schedule."  Brady was quoted in the release as stating that the company was looking at buying masks from foreign suppliers to sell to foreign purchasers.

13. The press release was false and misleading because, at the time, Praxsyn had not reached any specific agreement with a supplier or purchaser to buy or sell masks.  The company had no orders from any potential purchaser to evaluate.  According to company documents,

Praxsyn's "orders" and "negotiating" the sale of masks consisted of two inquiries Praxsyn received via email about buying masks, one purportedly from an Italian firm and one allegedly from a Hong Kong company. Both letters were undated and contained no information about the companies themselves, their alleged need for masks, payment terms, or timetables. Brady saw copies of both letters.

14. Praxsyn's alleged negotiations with mask suppliers were no more definitive. By February 27, a company director had exchanged a handful of emails with two purported firms, one in Poland and one in Turkey. Representatives of both companies claimed to have hundreds of thousands or millions of masks available for sale, but had sent no proof, only a picture of the type of the alleged masks. There had been no discussions of any typical contract details, such as payment terms, production timetables, delivery standards, or proof that the masks were legitimate. Furthermore, on February 25, the director wrote to Brady that there were scams occurring in the mask industry.

15. Six days later, on March 4, 2020, Praxsyn issued another press release, also sent to the Globe Newswire for public distribution, entitled "Update: Praxsyn's Coronavirus Mask Demand." In it, the company made even more egregiously false statements, such as that it "*has* as large number of N95 masks, capable of protecting wearers from inhaling viruses, including the COVID-19 Coronavirus available for order" (emphasis added).

16. The release went on to further falsely state that "[u]tilizing a worldwide network, Praxsyn *has created* a direct pipeline from manufacturers and suppliers to buyers giving those that qualify, the fairest price on the market" (emphasis added). Brady was also quoted in the second release as telling any interested buyers that the company was accepting orders of a minimum of 100,000 masks.

17. Every factual statement in the March 4 press release was false. At the time, Praxsyn had no masks in its possession, no orders from any purchaser to buy masks, and no agreements to buy masks from any supplier or manufacturer. Because there were no orders, no agreements, and no masks, there was no pipeline. And there was no worldwide network – only email exchanges between Praxsyn and four foreign companies in which Praxsyn was trying to find masks to buy. There were a total of three inquiries from potential buyers, none of them going beyond the initial inquiry stage, by March 4.

18. Furthermore, Praxsyn had reason to doubt the validity of the promises of manufacturers or others to supply masks. On the same day Praxsyn issued the March 4 release, one of its directors sent an email acknowledging that "there is a lot of competition out there that is quite unscrupulous" on the supply side and trying to get answers to various fundamental questions in vetting suppliers. Because of the problems identifying suppliers with the appropriate masks, Praxsyn had no idea whether any of the masks it was seeking could protect against the COVID 19 virus, and it had no idea whether it could offer "the fairest price on the market" as its press release claimed. Brady received many of the emails the director sent and received, and therefore knew the true situation with Praxsyn's efforts to buy and sell masks.

19. Over the next four weeks, Praxsyn, largely through the director's efforts, continued without any success to find both suppliers and purchasers of masks. Finally, 27 days after falsely claiming that it had masks, had created a direct pipeline from manufacturers and suppliers to buyers, and was working through a worldwide network, Praxsyn (only after regulatory inquiries) issued a third press release on March 31 admitting that it had not ever had any masks to sell.

## V.  TRADING IN PRAXSYN STOCK

20. Praxsyn's stock trading volume increased significantly after both releases, and its

stock price also increased significantly after the second release. In the three months prior to February 27, Praxsyn's share price fluctuated between $0.0048 and $0.009, with an average daily trading volume of 384,165 shares. On February 27, Praxsyn's share price approximately doubled, fluctuating between $0.0095 and $0.0188 with a trading volume of 30,819,560 shares (approximately *80 times* the pre-February 27 volume). On March 4, the share price fluctuated between $0.0053 and $0.0091 with a trading volume of 12,043,460 shares.

## VI.  CLAIMS FOR RELIEF

### COUNT I

#### Violations Of Section 10(b) And Rule 10b-5(a) Of The Exchange Act

21. The Commission repeats and realleges Paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22. In February and March 2020, Praxsyn and Brady, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly employed devices, schemes, or artifices to defraud in connection with the purchase or sale of securities.

23. By reason of the foregoing, Praxsyn and Brady violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

### COUNT II

#### Violations Of Section 10(b) And Rule 10b-5(b) Of The Exchange Act

24. The Commission repeats and realleges Paragraphs 1 through 20 of this Complaint as if fully set forth herein.

25. In February and March 2020, Praxsyn and Brady, directly or indirectly, by the use

of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

26. By reason of the foregoing, Praxsyn and Brady violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.SC. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT III

### Violations Of Section 10(b) And Rule 10b-5(c) Of The Exchange Act

27. The Commission repeats and realleges Paragraphs 1 through 20 of this Complaint as if fully set forth herein.

28. In February and March 2020, Praxsyn and Brady, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly engaged in acts, practices, and courses of business which have operated, or are now operating and will operate, as a fraud upon the purchasers of securities.

29. By reason of the foregoing, Praxsyn and Brady violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(c), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(c).

## VII. REMEDIES REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find the Defendants committed the violations alleged, and:

### A. Permanent Injunctive Relief

Issue Permanent Injunctions enjoining Praxsyn and Brady from violating, directly or

indirectly, Section 10(b) and Rule 10b-5 of the Exchange Act.

## B. Civil Penalties

Issue an Order directing Praxsyn and Brady to pay civil money penalties pursuant to Section 21(d) of the Exchange Act.

## C. Officer and Director Bar

Issue an Order barring Brady from serving as an officer or director of any public company pursuant to Section 21(d) of the Exchange Act and Section 305(b)(5) of the Sarbanes-Oxley Act.

## D. Further Relief

Granting such other and further relief as this Court may deem just and appropriate.

## VIII. RETENTION OF JURISDICTION

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and over the Defendants in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

April 28, 2020

By: Robert K. Levenson, Esq.
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154